IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| CONTOUR INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:07-CV-234 |
| | ) | |
| U.S. BANCORP d/b/a U.S. BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This civil action is before the court for consideration of "Defendant's Motion for Summary Judgment" [doc. 38]. Plaintiff Contour Industries, Inc. ("Contour") has responded [doc. 43], and defendant U.S. Bancorp d/b/a U.S. Bank ("US Bank") has submitted a reply brief [doc. 48] and supplemental memorandum [doc. 51]. Oral argument is not necessary, and the motion is ripe for the court's determination. For the reasons that follow, the motion will be denied.

I.

*Background*

Timothy Byrd was working as a production employee when Keener Mallicote purchased Contour in 1999. Byrd was moved to a planner position in 2001 which brought him into the front office. His duties included taking customer orders and planning customers' glass production orders. Also in 2001, Byrd was promoted to Planning Manager.

His duties included processing the mail. Byrd was to take the checks received and stamp them with Contour's stamp, make out deposit slips, and pull corresponding invoices. He was then to turn the invoices over to Doug Jones, the company accountant, for payment.

At some point, Byrd began using a discarded endorsement stamp to deposit checks made out to Contour into his personal account with US Bank. He covered the "For Deposit Only" and account number portions of the stamp and forged Doug Jones's signature and then wrote "Pay to the order of" and signed his name. Byrd did this over a period of numerous months and diverted almost $400,000 into his personal account.

## II.

*Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by demonstrating that the non-moving party has failed to establish an essential element of that party's case for which he or she bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not support its motion with affidavits or other materials negating the opponent's claim. *Id.* at 323. Although the moving party has the initial burden, that burden may be discharged by a

"showing" to the district court that there is an absence of evidence in support of the non-moving party's case. *Id.* at 325 (emphasis in original).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

III.

*Analysis*

A. Tenn. Code Ann. § 47-3-405

US Bank has moved for summary judgment arguing that Contour's conversion claim is barred by Tenn. Code Ann. § 47-3-405(b). Contour amended its complaint and

3

alleged a claim for conversion pursuant to Tenn. Code Ann. § 47-3-420, which states in pertinent part:

> The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.

Tenn. Code Ann. § 47-3-420(a). US Bank asserts as a defense to this conversion claim § 47-3-405(b). In order to receive the benefits of this provision of Tennessee's version of the Uniform Commercial Code ("UCC"), US Bank must prove the elements under the section. Section 47-3-405(b) states:

> For the purpose of determining the rights and liabilities of a person who in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent endorsement of the instrument, the endorsement is effective as the endorsement of the person to whom the instrument is payable if it is made in the name of that person.

Pursuant to this provision, if an employee who has been given responsibility over a check fraudulently endorses the check, and the bank in good faith accepts the check for deposit, then "the endorsement is effective as the endorsement of the person to whom the instrument is payable if it is made in the name of that person." Tenn. Code Ann. § 47-3-405(b). The principle behind this provision is that the employer should bear the loss for fraudulent endorsements by employees as the employer is in a better position to avoid such

4

loss by better supervision, hiring decisions, and other preventative measures. Tenn. Code Ann. § 47-3-405 comments to official text.

> Section 47-3-405 defines responsibility regarding instruments as follows:
>
> "Responsibility" with respect to instruments means authority (i) to sign or endorse instruments on behalf of the employer, (ii) to process instruments received by the employer for bookkeeping purposes, for deposit to an account, or for other disposition, (iii) to prepare or process instruments for issue in the name of the employer, (iv) to supply information determining the names or addresses of payees of instruments to be issued in the name of the employer, (v) to control the disposition of instruments to be issued in the name of the employer, or (vi) to act otherwise with respect to instruments in a responsible capacity. "Responsibility" does not include authority that merely allows an employee to have access to instruments or blank or incomplete instrument forms that are being stored or transported or are part of incoming or outgoing mail, or similar access.

Tenn. Code Ann. § 47-3-405(3).

Byrd's involvement with the checks received by Contour was described by Contour's current owner Keener Mallicote in deposition. He stated:

> A.  Well, he [Byrd] received the - - he received the mail and distributed it, all of it that wasn't checks and then he took the checks that were received, he endorsed them, he made out a deposit slip, he pulled the invoice - - corresponding invoices for those checks and then he turned those over to Doug who entered them in the system. He said - - Doug said today that sometimes Tim, sometimes Inez would do that. I didn't know that. But yeah, that pretty much followed the same . . .
>
> Q.  But he had responsibility to get the checks and to at least get them - - get the paperwork pulled and get them to give to Doug for . . .

5

> A. That's right.
>
> . . .
>
> Q. Okay. And I - - the fact that he had the deposit stamp for the company's bank was based on what you testified a moment ago not unusual or unexpected either, that was part of his - - what he needed in order to prepare the deposits for Mr. Jones?
>
> A. Yes, to receive the mail and create the deposits he had that.

Based upon the description of Byrd's duties with the checks submitted to Contour and the definition of "responsibility" in § 47-3-405(3), the court finds that Byrd was an employee with responsibility with respect to instruments. He processed checks for deposit and had the authority to endorse the checks for deposit using the Contour's stamp, which was kept in his desk.

There still must be a showing that the endorsements were fraudulent and that the bank paid or deposited the checks in good faith in order for US Bank to be successful in asserting this defense.

There does not appear to be a dispute that the endorsements were fraudulent. Section 47-3-405(2) states in part that a "'fraudulent endorsement' means (i) in the case of an instrument payable to the employer, a forged endorsement purporting to be that of the employer . . . ."

> Under subsection (b), an endorsement is made in the name of the person to whom an instrument is payable if (i) it is made in a name substantially similar to the name of that person or (ii) the instrument, whether or not endorsed, is deposited in a depository

6

bank to an account in a name substantially similar to the name
of that person.

Tenn. Code Ann. § 47-3-405(c).

Byrd stamped the back of the checks with Contour's stamp and forged the name of Doug Jones, Contour's accountant. He covered the part of the stamp that showed "For Deposit Only" and the name of Contour's bank. Byrd then wrote "Pay to the order of" and signed his name. Byrd's conduct falls within the description of an endorsement in subsection (c), so the court finds that Byrd made fraudulent endorsements as required for US Bank's assertion of its defense under § 47-3-405(b).

The remaining issue is whether US Bank deposited the checks in good faith.[1] In *Bank/First Citizens Bank v. Citizens & Associates*, 82 S.W.3d 259 (Tenn. 2002),[2] the

---

[1] The court notes at this point that Tennessee's version of § 3-405(b) differs from the model U.C.C. version and the version adopted by other states. The model code contains a second sentence that states, "If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss." U.C.C. § 3-405(b) (2002). In states that have adopted this sentence in their version of § 3-405(b), once the bank has shown that it paid or deposited the checks in good faith, the burden shifts to the employer to prove that the bank failed to exercise ordinary care and that the failure substantially contributed to the loss resulting from the fraud. *See, e.g., Shane Smith Enters. v. Bank of Am.*, No. 4:06CV00376 JLH, 2007 WL 1880201, at *6 (E.D. Ark. June 29, 2007) (citing Ark. Code Ann.§ 4-3-405(b); *Cont'l Cas. Co. v. Fifth/Third Bank*, 418 F. Supp. 2d 964, 972 (N.D. Ohio 2006)). However, the Tennessee General Assembly did not enact the 1990 comparative fault provision in U.C.C. § 3-405(b). *C-Wood Lumber Co. v. Wayne County Bank*, 233 S.W.3d 263, 277 n.33 (Tenn. Ct. App. 2007). Thus, if the bank shows it deposited the checks in good faith, the inquiry ends at that point. The burden does not shift to the employer to present proof regarding whether or not the bank exercised ordinary care in depositing the checks presented by Byrd.

[2] *Bank/First* involved application of § 47-3-406. A depository bank that had taken checks
(continued...)

7

Tennessee Supreme Court addressed the meaning of "good faith" in Chapters 3 and 4 of Title 47 of the Tennessee Code. The Court noted that "[i]n 1995, the Tennessee General Assembly substantially adopted Revised Articles 3 and 4, although, interestingly, it did not include the definition of 'good faith' contained in UCC section 3-103(a)(4)." *Id*. at 264. After analyzing the situation, the court found:

> Consequently, we must conclude that the General Assembly intentionally omitted the UCC definition of "good faith" as it applies in Chapters 3 and 4 of Title 47, and we construe this term in accord with the general code definition to mean "honesty in fact in the conduct or transaction involved." *See* Tenn. Code Ann. § 47-1-201(19).
>
> . . . This Court has defined the "honesty in fact" standard to mean an absence of a "knowing or reckless disregard of a

---

²(...continued)
with forged endorsements that had been deposited into a personal account brought a declaratory judgment action against the drawer seeking a determination that it had no liability on the checks. The Supreme Court held that Bank/First, the depository bank, took the checks in good faith, but could not assert the defense of § 47-3-406 because the bank did not show that the defendant, Citizens and Associates's failure to exercise ordinary care substantially contributed to the actual making of the forged checks and reversed the Court of Appeals. (The Tennessee General Assembly enacted the comparative fault provision applicable to forged signatures or endorsements in § 3-406(b). *C-Wood Lumber*, 233 S.W.3d at 277 n.33.) With regard to the Supreme Court's finding of good faith by Bank/First, the Court stated:

> Our review of the record reveals that while First Citizens Bank was certainly negligent in permitting the deposit of a check made payable to a corporation into an individual account, no evidence shows that it knowingly disregarded the rights of anyone. Nor does a preponderance of the evidence support a finding that the bank acted recklessly in this regard. Therefore, we conclude that the record supports the conclusions of the lower courts that First Citizens Bank took the instruments in good faith.

*Bank/First*, 82 S.W.3d at 264-65.

8

> customer's rights." *Glazer v. First Am. Nat'l Bank*, 930 S.W.2d 546, 549 (Tenn. 1996) (defining "good faith" in section 47-1-102(19)).

*Id*. The Tennessee Supreme Court in *Glazer* adopted Webster's Dictionary definition of "honesty," defining it as "fairness and straightforwardness of conduct." *Glazer*, 930 S.W.2d at 549-50. *NACCO Materials Handling Group v. Toyota Materials Handling USA*, No. 03-2561 B A, 2005 WL 2649208, at *10 (W.D. Tenn. Oct. 17, 2005).

The UCC does not define "reckless" or "reckless disregard." *Black's Law Dictionary* defines "reckless" as: "Characterized by the creation of a substantial and unjustifiable risk or harm to others and by a conscious (and sometimes deliberate) disregard for or indifference to that risk; heedless; rash." *Black's Law Dictionary* (8th ed. 2004). "Reckless disregard" is defined by *Black's Law Dictionary* as: "Conscious indifference to the consequences of an act." *Id*. At this point, the court looks to such definitions in conjunction with the very limited Tennessee case law defining "good faith" in order to evaluate whether US Bank acted in good faith under § 47-3-405.

The transactions involved are Byrd's deposits into his personal account of the checks payable to Contour bearing the forged endorsements. The determination of whether US Bank acted in good faith is focused on the conduct surrounding these transactions, i.e., US Bank's deposit of the checks into Byrd's personal account. Over a course of approximately 37 months, Byrd deposited 62 checks into his personal account that were written payable to Contour.

9

US Bank has a specific written procedure in its Operating Procedures Manual that deals with the depositing of checks payable to a business.[3] The acceptance of the checks made payable to Contour that were deposited into Byrd's personal account was conduct not in accordance with that specific written procedure. There is deposition testimony in the record from a bank witness concerning the circumstances surrounding acceptance of the first check from Byrd. She testified that she received a call supposedly from someone at Contour saying that money was owed to Byrd and he would be bringing in a check made out to Contour that needed to be signed over to him. However, according to the bank witness, the authority to accept that deposit was only for the one check; it did not extend to a blanket authorization for all such checks made out to Contour. Nevertheless, for 37 months, Byrd deposited checks made payable to Contour in his personal account, some for thousands of dollars. He eventually stole almost $400,000 before the fraud was discovered.

The court is reluctant to grant summary judgment on these facts. It appears that over a three-year period US Bank's personnel, by accepting the 62 checks at issue, did not comply with the written procedure regarding the depositing of checks payable to businesses. A jury could infer that in doing so, US Bank acted recklessly and not in good faith in depositing the checks. The bank's employee's were charged with knowledge of the procedures in the Operating Procedures Manual concerning how checks made payable to a business should be deposited. Allowing such checks to be deposited in Byrd's personal

---

[3] The exact language of the procedure is subject to a protective order. Therefore, the specific provision has not been quoted verbatim by the court in its opinion.

account was a violation of that procedure. While there appears to be an explanation for the first check presented by Byrd, he was allowed to make such deposits over a 37 month period. A jury could infer that this conduct reflected a "conscious indifference" or that it was heedless. The court thus believes that there is a material issue of fact regarding whether US Bank acted in good faith. Therefore, summary judgment based upon § 47-3-405 in favor of US Bank is not appropriate.

## B. Tenn. Code Ann. § 47-3-307

Contour argues that the Tennessee Code provision that applies in this case is § 47-3-307 for breach of fiduciary duty. In doing so, Contour claims that Byrd was a fiduciary and that US Bank's acceptance of the checks was a breach of fiduciary duty under this statutory provision. Section 47-3-307 provides in pertinent part:

> (1) "Fiduciary" means an agent, trustee, partner, corporate officer or director, or other representative owing a fiduciary duty with respect to an instrument.
>
> (2) "Represented person" means the principal, beneficiary, partnership, corporation, or other person to whom the duty stated in paragraph (1) is owed.
>
> (b) If (i) an instrument is taken from a fiduciary for payment or collection or for value, (ii) the taker has knowledge of the fiduciary status of the fiduciary, and (iii) the representative person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply:
> . . .

11

(2) In the case of an instrument payable to the represented person or the fiduciary as such, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary, or (iii) deposited to an account other than an account of the fiduciary, as such, or an account of the represented person. . . .

Even if it is assumed Byrd was a fiduciary, in order for § 47-3-307(b) to apply, US Bank had to have had actual knowledge of Byrd's fiduciary status when he made the deposits. *C-Wood Lumber*, 233 S.W.3d at 285 (citing Tenn. Code Ann. § §47-3-307 cmt. 2 and 47-1-201(25) [now § 47-1-202]) (footnote omitted). "[T]his knowledge must be possessed not just by the bank officers but also by the persons acting for the bank in the transaction." *C-Wood Lumber*, 233 S.W.3d at 285 (citing Tenn. Code Ann. §§ 47-3-307 cmts. 2 & 3 and 47-3-201(27) [now § 47-1-202]) (footnote omitted).

Comment 2 to § 47-3-307 states in part:

Section 3-307(b) applies only if the person dealing with the fiduciary "has knowledge of the fiduciary status of the fiduciary." Notice which does not amount to knowledge is not enough to cause Section 3-307 to apply. "Knowledge" is defined is Section 1-201(25). In most cases, the "taker" referred to in Section 3-307 will be a bank or other organization. Knowledge of an organization is determined by the rules stated in Section 1-201(27). In many cases, the individual who receives and processes an instrument on behalf of the organization that is the taker of the instrument "for payment or collection or for value" is a clerk who has no knowledge of any fiduciary status of the person from whom the instrument is received. In such cases, Section 3-307 doesn't apply because, under Section 1-201(27), knowledge of the organization is determined by the knowledge of the "individual conducting that

12

transaction," i.e. the clerk who receives and processes the instrument. Furthermore, paragraphs (2) and (4) each require that the person acting for the organization have knowledge of facts that indicate a breach of fiduciary duty. In the case of an instrument taken for deposit to an account, the knowledge is found in the fact that the deposit is made to an account other than that of the represented person or a fiduciary account for benefit of that person. In other cases the person acting for the organization must know that the instrument is taken in payment or as security for a personal debt of the fiduciary or for the personal benefit of the fiduciary. For example, if the instrument is being used to buy goods or services, the person acting for the organization must know that the goods or services are for the personal benefit of the fiduciary. *The requirement that the taker have knowledge rather than notice is meant to limit Section 3-307 to relatively uncommon cases in which the person who deals with the fiduciary knows all the relevant facts: the fiduciary status and that the proceeds of the instrument are being used for the personal debt or benefit of the fiduciary or are being paid to an account that is not an account of the represented person or of the fiduciary, as such.* Mere notice of these facts is not enough to put the taker on notice of the breach of fiduciary duty and does not give rise to any duty of investigation by the taker.

Tenn. Code Ann. 47-3-307 cmt. 2 (emphasis added).

Before addressing Contour's argument regarding § 47-3-307, the court notes that even if it is assumed that Byrd was a fiduciary, that fact does not remove the case from § 47-3-405. This case involves forged endorsements by an employee who had responsibility regarding the checks involved, whether or not he was a fiduciary. As such, § 47-3-405 clearly applies. *Cf.* Tenn. Code Ann. § 47-3-405 cmt. 3, case #4.

As to section 47-3-307, that provision does not apply in this case. Even if Byrd was a fiduciary, there is no proof that US Bank had the appropriate knowledge of that status

13

when Byrd made the deposits. The deposition testimony from two bank employees submitted by Contour reflects no knowledge about Byrd's position at Contour or his status as a fiduciary. Contour has not presented any evidence to demonstrate that US Bank's officers and those who acted for US Bank in the transactions with Byrd had the requisite actual knowledge of Byrd's fiduciary status that would satisfy the requirements of § 47-3-307(b).

### C. Contour's Negligence Claim

In the amended complaint, Contour again attempts to assert a claim for negligence against US Bank. The court has already ruled pursuant to *C-Wood Lumber*, 233 S.W.3d at 281-82 that Contour cannot assert a claim for common law negligence [doc. 19]. Contour alleges as part of the negligence claim §§ 47-3-405 and 406. However, these sections do not establish claims for negligence. Accordingly, the allegations in the complaint concerning a claim for negligence will be dismissed.

### D. Punitive Damages Claim

Contour has asserted in the amended complaint a claim for punitive damages. US Bank did not raise this claim in its motion for summary judgment. The last order of the court that referenced this claim stated that the issue remained under advisement [doc. 28]. In light of the court's ruling above that the only claim remaining for trial is conversion under Tenn. Code Ann. § 47-3-420, the court will require the parties to brief the issue of whether

14

Contour is entitled as a matter of law to punitive damages in this type of case. The court is not asking whether US Bank's conduct meets the standard of *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992), but whether the UCC as enacted in Tennessee permits a plaintiff to recover punitive damages in a case of statutory conversion under § 47-3-420. The parties will have until July 24, 2009, to submit their briefs.

IV.

*Conclusion*

For the reasons stated herein, US Bank's motion for summary judgment will be denied. However, Contour's claim for negligence will be dismissed. This case will proceed to trial solely on the claim for conversion based on Tenn. Code Ann. § 47-3-420. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge